316 P.3d 602

**JOSE M., Appellant,**

v.

**ELEANOR J., S.M., Appellees.**

**No. 1 CA–JV 13–0069.**

Court of Appeals of Arizona, Division 1.

Jan. 14, 2014.

David W. Bell, Attorney at Law, Mesa By David W. Bell, Counsel for Appellant.

Eleanor J., Phoenix, Appellee In Propria Persona.

Judge KENT E. CATTANI delivered the opinion of the Court, in which Presiding Judge MAURICE PORTLEY and Judge JOHN C. GEMMILL joined.

## OPINION

CATTANI, Judge.

¶ 1 This is an appeal from a juvenile court order granting a mother's request to terminate her child's father's parental rights. For reasons that follow, we vacate and remand.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 S.M. was born in 2006; her biological parents are Jose M. ("Father") and Eleanor J. ("Mother"). In 2009, the Arizona Department of Economic Security filed a paternity and support action against Father. Father stipulated to paternity, but did not attempt to establish parenting time. Mother assigned her rights to receive support from Father to the State because she received public assistance for the child. The court issued an order confirming paternity, but found that Father's income consisted only of Social Security disability payments, and that his earnings were below the amount at which child support is required. Accordingly, Father was not ordered to pay any back child

support, and the court did not order prospective support payments.

¶ 3 In February 2012, Father initiated a new proceeding to establish parenting time. While that matter was pending, Mother filed a petition in July 2012 to terminate Father's parental rights on the ground of abandonment, which Father opposed. Mother requested that the two matters be addressed together, and the juvenile court consolidated them and set the matter for a one-day hearing.

¶ 4 Mother testified that she was 15 years of age and Father was 16 when their child was conceived. Father was present at S.M.'s birth, but since then has had only sporadic contact with the child. Although Mother and Father initially communicated with each other by telephone and through social media, by the time of the hearing they no longer did so.

¶ 5 Mother testified that Father did not see S.M. for four months after her birth, and that he only saw her "here and there" for the rest of 2006. Father did not have any contact with S.M. in 2007, and he saw her "off and on" for two to three months in 2008. Father did not have any contact with S.M. in 2009 and relatively infrequent contact thereafter. He last had contact with S.M. on Father's Day 2011, approximately eight months before seeking to establish parenting time.

¶ 6 Mother further testified that Father had been abusive and violent toward her during their relationship and afterwards. Mother had a restraining order placed against Father in July 2007. She acknowledged, however, that Father had never been abusive or violent toward S.M.

¶ 7 Mother also acknowledged there were occasions she would not allow S.M. to visit Father, explaining that at times the visits were to occur too late in the evening, and at other times Father had "people [at his residence] that didn't seem right." When Mother made arrangements for Father to pick up S.M. at the park across from her residence, Father was late and picked her up or dropped her off at sporadic and late hours.

¶ 8 Mother testified that she also has a son with her fiancé, Eric. Mother indicated that S.M. has a father-daughter bond with Eric and loves her one-year-old brother. Mother, Eric, S.M., and the younger brother live together. Eric has treated S.M. like his own daughter and apparently would like to adopt her.

¶ 9 Father testified that he has a "very close" relationship with S.M., but Mother has kept him from having contact with her. Father admitted he had not been involved in S.M.'s life in the year preceding the hearing, but he attributed his lack of contact and involvement to Mother taking S.M. away from him. Father indicated that Mother had changed her phone number and blocked him from contacting her through social media. Although he knew Mother worked for her father's company, Father claimed he could not find her at work because the office location had changed, and he did not know the new address.

¶ 10 After taking the matter under advisement, the juvenile court found that Father had made a conscious decision not to have a relationship with S.M., and that he had abandoned her by withholding parental presence, love, care, and financial support. The court found severance to be in S.M.'s best interests because "the termination of the parent['s] rights will free [S.M.] for adoption. And, here the [fiancé] of the Petitioner is willing to adopt. This will provide the child with a stable home and a parent who is willing to consistently support the child financially and emotionally."

¶ 11 Father timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 8–235(A).[1]

## DISCUSSION

¶ 12 A parent's right to "the companionship, care, custody, and management of his or her children" is a fundamental, consti-

1. Absent material revisions after the relevant date, statutes cited refer to the current version unless otherwise indicated.

tutionally protected right. *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). Under A.R.S. § 8–533(B), that right may only be terminated upon a finding that at least one statutory ground for severance has been established by clear and convincing evidence, and that severance is in the best interests of the child. *Kent K. v. Bobby M.,* 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005). We review a juvenile court's severance order for an abuse of discretion and accept the court's factual findings unless clearly erroneous. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.,* 207 Ariz. 43, 47, ¶ 8, 83 P.3d 43, 47 (App.2004).

¶ 13 Father contends that the juvenile court erred by finding the statutory ground of abandonment as a basis for terminating his parental rights, and that the court erred by finding severance to be in S.M.'s best interests.

## I. Abandonment.

¶ 14 Under A.R.S. § 8–533(B)(1), parental rights may be terminated based on abandonment, as defined in A.R.S. § 8–531(1):

"Abandonment" means the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

Abandonment is measured by a parent's conduct, not subjective intent. *Michael J. v. Ariz. Dep't of Econ. Sec.,* 196 Ariz. 246, 249, ¶ 18, 995 P.2d 682, 685 (2000). When "circumstances prevent the ... father from exercising traditional methods of bonding with his child, he must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary." *Id.* at 250, ¶ 22, 995 P.2d at 686 (quotation omitted).

¶ 15 Here, the juvenile court based its conclusion that Father had abandoned S.M. in large part on the mistaken premise that

Father had failed to provide required financial support for S.M. The court's February 11, 2013 minute entry states:

[C]hild support was not set [in the 2009 action] because there was no information as to father's income. Father never attempted to establish his parenting time rights in this paternity matter. Of course, if he had done so, a formal order of child support would have been entered....

Abandonment is measured by the parent's conduct and not by the subjective intent of the parent. *Michael J. v. Arizona Dept. of Economic Security* 196 Ariz. 246 [995 P.2d 682] (2000). Typical conduct which constitutes abandonment is withholding parental presence, love, care, as well as financial support. *Anonymous v. Anonymous* 25 Ariz.App. 10 [540 P.2d 741] (1975). In this case [Father] has shown all of this conduct....

Even after the filing of the [2012] petition to terminate father made no efforts to support his child.

¶ 16 This statement regarding child support obligations is inaccurate because there was information in the 2009 proceeding (conducted by a different judge) relating to Father's limited income (Social Security disability payments), and the court in that proceeding specifically found that Father did not owe back child support (payable to the State) or prospective support.

¶ 17 The juvenile court's mistaken understanding regarding child support is further evidenced by the court's interjection when Father's counsel questioned Mother about her knowledge that Father had made efforts to have more contact and visitation with S.M., including filing a request for visitation rights:

Q. [ ] But you knew that he wanted to have some kind of contact and visitation with [S.M.], right?

A. Through what he put on the paper, yes.

THE COURT: Counsel, the action that [Father] started was consolidated with this matter. He filed it after she filed her action to terminate his rights. And that and the 2009 child support action was con-

solidated into this matter and I had exclusive jurisdiction over both.

So, his response—everything came here because he filed a separate action; it wasn't given to me, but my staff has pulled the records. So, everybody's aware, that on 12/22/09 there was a stipulation as to paternity because Father failed to appear but had signed a waived [sic] of his rights and admitted paternity, on February 23rd, *child support was set at $300 a month.* And eventually both matters were transferred over here before anything else was done because of the pending termination matter. So—

[Father's Counsel]: Thank you, Judge.

THE COURT:—probably nothing was done in terms of child support from '09 until '12 when he asked for parenting time. So, then it all came over here.

(Emphasis added.) There is no evidence in the record that Father was ordered to pay $300 per month in February 2010, and the juvenile court's assertion to that effect is inconsistent with orders issued during the 2009 proceeding.

¶ 18 The above-quoted discussion also calls into question the court's findings regarding Father's alleged conscious decision to withhold parental presence, love, and care. Contrary to the court's statement, Father did not file his request for parenting time after Mother filed a request to terminate his parental rights. Instead, Father initiated proceedings in February 2012 to establish parenting time, and Mother's request to terminate Father's parental rights was filed several months *later* in July 2012.

¶ 19 There is no question that Father has not played a significant role in S.M.'s life, mostly due to Father's own choices. But there is evidence that Father has made efforts to have a relationship with S.M., and that some of those efforts have been thwarted by Mother's reluctance to allow S.M. to spend time with him. Mother declined to allow some of Father's requests for parenting time, and she apparently filed the severance action in response to Father's attempt to establish court-ordered parenting time. Given the juvenile court's mistaken understandings regarding child support and Fa-

ther's efforts to spend time with S.M., we vacate the court's finding that Mother established abandonment by clear and convincing evidence, and remand for a redetermination of that issue.

## II. Best Interests.

¶ 20 Our resolution of the abandonment issue renders moot whether the juvenile court erred by finding that severance is in the best interests of the child. We address this issue, however, because it may be relevant on remand if Mother again seeks severance.

¶ 21 To determine whether severance is in the best interests of a child, the court balances the "unfit" parent's rights against the child's rights. *Kent K.,* 210 Ariz. at 287, ¶ 37, 110 P.3d at 1021. Termination of the parent-child relationship is in the child's best interests if the child would be harmed if the relationship continued or would benefit from the termination. *Mary Lou C,* 207 Ariz. at 50, ¶ 19, 83 P.3d at 50. A court's determination of best interests must be supported by a preponderance of evidence. *Kent K.,* 210 Ariz. at 284, ¶ 22, 110 P.3d at 1018.

¶ 22 Here, there is no evidence that S.M.'s time with Father has been harmful to the child. Mother has acknowledged that, despite her own difficulties with Father, he has not been abusive or violent toward S.M. Nor is there evidence that Father would not be willing to undertake counseling, as suggested by Mother, to aid him with his apparent objective of developing a better relationship with his daughter. Father has not violated any court order regarding S.M., and there is no evidence of personal characteristics that render Father incapable of parenting his child.

¶ 23 The juvenile court's only stated basis for its best interests finding was that severance would allow S.M. to be adopted by Mother's fiancé. This court has held that an adoptive plan may be evidence of a benefit to be derived from terminating parental rights. *E.g., Ariz. Dep't of Econ. Sec. v. Oscar O.,* 209 Ariz. 332, 334–35, ¶¶ 6–8, 100 P.3d 943, 945–46 (App.2004). That holding, however,

involved a severance proceeding initiated by the State, in a case in which the child was in foster care. Thus, the focus of the proffered benefit for the child was the stability and permanency that could be established through adoption. *Id.* at 337, ¶ 16, 100 P.3d at 948. In contrast, in the instant case, S.M. is not in foster care; she has always lived with and will presumably continue to live with Mother for the foreseeable future. Mother and S.M. currently live with Mother's fiancé and their son, and there is no suggestion that any day-to-day aspect of the current living arrangement will change based on severing Father's rights. Because it appears that S.M.'s living arrangement already offers stability and permanence, Mother's stated intent to marry fiancé on some undetermined future date, and fiancé's interest in adopting S.M., without more, do not establish an increase in stability and permanency for S.M. to the degree necessary to demonstrate a benefit warranting severance of Father's parental rights.

## CONCLUSION

¶ 24 For the foregoing reasons, we vacate the decision of the juvenile court and remand for further proceedings consistent with this decision.