NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BARBARA K., *Appellant,*

*v.*

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, A.K., S.K., A.K., A.S., *Appellees.*

No. 1 CA-JV 13-0256
FILED 5-13-2014

Appeal from the Superior Court in Maricopa County
No. JD19656
The Honorable Connie Contes, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll, Esq., Scottsdale
By Denise Lynn Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee, ADES*

---

## MEMORANDUM DECISION

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Margaret H. Downie joined.

---

**K E S S L E R**, Judge:

**¶1**        Appellant Barbara K. ("Mother") appeals from the juvenile court's order terminating her parental rights to her four oldest children, AK, SK, AK, and AS.  For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**        Mother is the biological parent of AS, born December 2001, AK, born April 2005, SK, born June 2007, and AK, born September 2009.[1] Between 2005 and 2010, Child Protective Services ("CPS") received several reports asserting Mother failed to provide the children with adequate food, shelter and care, abused drugs, suffered from bipolar disorder and was not taking her medications, and alleging incidents of domestic violence.

**¶3**        CPS took custody of AK, SK, and AK ("the K children") in October 2010 following Mother's arrest on an outstanding aggravated DUI warrant.  The charge related to an April 2007 incident during which Mother struck a police officer with her vehicle mirror as she passed him on the roadway.  Mother had fallen asleep while under the influence of pain medication.  She reportedly was lethargic, slurred her speech, and admitted taking various medications, including Percocet and Ativan. Mother's two oldest children were in the vehicle at the time, and Mother was eight-months pregnant with SK.  Mother later was arrested while she was living in a Phoenix motel room, which police described as "filthy." CPS thereafter took custody of the K children and placed them in foster care, where they remained throughout these proceedings.

**¶4**        CPS took custody of AS in May 2012 after her maternal uncle, with whom Mother had sent her to live, filed paperwork with the

---

[1] Mother gave birth to another child in October 2012, but that child was not subject to the severance order and is not a party to this appeal.

Yavapai County Family Court alleging Mother was unfit to parent. AS was thereafter united with her siblings in the same foster placement.

¶5         CPS offered Mother extensive reunification services, including random urinalyses ("UA's") through TASC, a TERROS Families F.I.R.S.T. referral, supervised visitation, parent aide services, transportation assistance, family group decision making, child and family team meetings, domestic violence counseling, and parent education classes through Southwest Behavioral Health. Mother participated in parent aide services from July 2012 to March 2013, counseling sessions with Dr. Pamela Raebel from January 2013 to May 2013, and completed her Southwest Behavioral Health parent education classes. A persistent problem, however, was Mother's use of opiates.

¶6         From February 2011 to March 2013, Mother tested positive for numerous opiate compounds in varying combinations on fifteen different occasions. These compounds included hydrocodone, oxycodone, oxymorphone, morphine, and codeine. Mother claimed the positive tests resulted from her use of pain medication prescribed for her medical conditions, which include Crohn's disease and fibromyalgia. Despite requests from CPS and Dr. Raebel, Mother failed to provide any medical records or documentation showing she legally acquired and used opiates, except for a single Percocet prescription label dated January 11, 2013— after all but two of her positive UA's.

¶7         In April 2013, Dr. Glenn Moe conducted a best interests assessment to determine whether the children would be best served by reunification or severance and adoption. During this assessment, Dr. Moe noted that, in late 2012, CPS had planned to reunify the family, but the case plan changed to severance and adoption after Mother relapsed to opiate use. Dr. Moe explained the children have special needs Mother will be unable to meet in the foreseeable future. He recommended CPS proceed with severance and adoption.

¶8         In May 2013, the Arizona Department of Economic Security ("ADES") moved to sever Mother's relationship with her children. After a four-day hearing, the juvenile court severed Mother's parental rights to all four children based upon her history of chronic substance abuse, Ariz. Rev. Stat. ("A.R.S.") section 8-533(B)(3) (2014),[2] and also found severance

---

[2] We cite the current versions of statutes when no changes material to this decision have since occurred.

as to the K children was appropriate based upon their out-of-home placement for at least fifteen months, A.R.S. § 8-533(B)(8)(c). Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A) (2014), 12-120.21(A)(1) (2003), and 12-2101(A)(1) (Supp. 2013).

## STANDARD OF REVIEW

**¶9** The juvenile court may sever parental rights if it finds by clear and convincing evidence at least one of the statutory grounds set forth in A.R.S. § 8-533, *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12, 995 P.2d 682, 685 (2000), and by a preponderance of the evidence that severance is in the best interests of the child, *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41, 110 P.3d 1013, 1022 (2005). "On review . . . we will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002). Accordingly, we address Mother's arguments "view[ing] the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010).

## DISCUSSION

**¶10** The juvenile court severed Mother's parental rights to all four children, pursuant to A.R.S. § 8-533(B)(3),[3] after finding she was unable to discharge her parental responsibilities because of a history of chronic substance abuse, and the condition likely will continue for a prolonged indeterminate period. Additionally, the juvenile court found severance as to the K children was appropriate, under A.R.S. § 8-533(B)(8)(c),[4] because the K children had been in an out-of-home

---

[3] Under A.R.S. § 8-533(B)(3), severance is appropriate if:

> [T]he parent is unable to discharge parental responsibilities because of mental illness, mental deficiency or a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period.

[4] Severance is appropriate under A.R.S. § 8-533(B)(8)(c) if the children are being cared for in an out-of-home placement, ADES makes diligent reunification efforts, and:

placement for more than fifteen months and Mother had been unable to remedy the circumstances that resulted in their removal. Finally, the juvenile court found severance was in the children's best interests because a suitable adoptive placement capable of keeping the children together and providing stability existed, and because of concerns Mother could not meet the needs of each child.

¶11     Mother does not dispute the reasonableness or adequacy of the reunification services provided to her, nor does she dispute the K children were in an out-of-home placement for over fifteen months. Instead, Mother argues severance was improper because she was making progress with her mental health and parenting skills, and therefore should have been allowed more time to participate in services in order to fully comply with CPS's expectations. Because of her progress in some areas, Mother argues the juvenile court erred in finding she failed to remedy the circumstances that brought the children into CPS care (i.e., her substance abuse), she would be incapable of exercising proper and effective parental care in the future, and termination was in the children's best interests. We disagree.

I.      Failure to Remedy the Circumstances Resulting in Removal

¶12     CPS identified several issues necessitating removal, including Mother's failure to provide adequate food, shelter, care, supervision and financial assistance, her failure to manage and treat her mental health issues, and concerns about domestic violence. In an effort to remedy these issues, Mother participated in various counseling and parent education services. By the end of Mother's counseling, Dr. Raebel opined Mother's depression symptoms were improving and her living situation appeared safe. During the severance hearing, Dr. Raebel testified Mother had become more assertive, had learned about warning signs of unhealthy relationships, and had improved her coping, parenting,

---

The [children have] been in an out-of-home placement for a cumulative total period of fifteen months or longer . . ., the parent has been unable to remedy the circumstances that cause the [children] to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

and positive communication skills.  Parent aide services noted Mother still had difficulties controlling the children and the living environment appeared chaotic, but also reported that, by early 2013, Mother was able to provide minimally adequate food, clothing, and shelter for the children.

¶13        Mother's substance abuse, however, remained a significant obstacle to reunification.  CPS reports repeatedly indentified Mother's continued opiate abuse as a core factor necessitating CPS involvement.  Indeed, CPS initially took custody of the K children after Mother's arrest for an aggravated DUI that resulted when she fell asleep while driving under the influence of pain medications and struck a police officer.  Case Manager Douglas DeCiancio testified ADES initially considered reunification because of Mother's progress in other areas and a nearly year-long period of clean UA's, but changed the case plan to severance and adoption after Mother relapsed to opiate use in early 2013.  This led DeCiancio to opine Mother had failed to remedy the core reasons for the children's removal: her behavioral and substance abuse problems.

¶14        Mother argues ADES failed to prove her use of opiates was abusive, rather than appropriate and necessary for pain associated with her Crohn's disease and fibromyalgia.  But reasonable evidence supports the juvenile court's conclusion that Mother abuses opiates and failed to remedy the problem despite nearly three years of reunification services.

¶15        TASC records show Mother tested positive for several different opiate compounds in various combinations on fifteen occasions between 2011 and 2013.  Mother also missed numerous scheduled UA's.  Despite requests from DeCiancio and Dr. Raebel, Mother was unable to provide records or documentation showing she legally acquired and used opiates as part of a pain management regimen.  The sole record Mother produced was a Percocet prescription label dated January 11, 2013—eight days after all but two of her positive UA's.  DeCiancio suggested the numerous and differing opiate combinations for which Mother tested positive were inconsistent with a prescription regimen.  Dr. Raebel echoed this concern, noting if Mother were only taking Percocet for pain, she would only test positive for Percocet compounds.  DeCiancio testified Mother exhibits "drug-seeking behavior," particularly by avoiding discussing or documenting her alleged pain management treatment and prescriptions, and opined she will continue to abuse opiates in the future.

¶16        Relying upon *Maricopa County Juvenile Action No. JS-501568*, 177 Ariz. 571, 576, 869 P.2d 1224, 1229 (App. 1994), Mother argues severance is improper because she made good-faith efforts to comply with

CPS's remedial services. That case, however, involved severance under A.R.S. § 8-533(B)(8)(a), which requires a finding that the parent "substantially neglected or willfully refused to remedy the circumstances" causing removal. Section 8-533(B)(8)(c), on the other hand, requires only that Mother has been "unable to remedy the circumstances" causing removal, regardless of whether that inability was willful or simply the result of failed good-faith efforts.

¶17 Collectively, Mother's positive UA's, failure to provide documentation of a prescribed pain management regimen, and reluctance to discuss her treatment led DeCiancio to conclude Mother fell short of compliance with CPS's expectations because her substance abuse problem persists. DeCiancio opined Mother would not benefit from more time to participate in services. Thus, reasonable evidence supports the juvenile court's finding that Mother has a continuing substance abuse problem she has been unable to remedy, despite nearly three years of reunification services.

II.     Inability to Successfully Parent

¶18 Mother also argues the juvenile court erred in finding she is unable to discharge her parental responsibilities or exercise proper and effective parental care because of substance abuse. Mother points to her progress in parenting education services and that at the time of the severance hearing she was caring for her newborn child.

¶19 The term "parental responsibilities" does not refer to an exclusive set of parenting skills or abilities, but instead establishes a flexible standard that allows the juvenile court to consider the unique circumstances of each termination case. *Maricopa Cnty. Juv. Action No. JS-5894*, 145 Ariz. 405, 409, 701 P.2d 1213, 1217 (App. 1985). The record shows the children have special needs. AK suffers from ADHD, aggression issues, and is considered emotionally disabled at school. The three youngest children suffer from enuresis associated with visits with Mother. Further, all children presented with substantial tooth decay and dental issues when CPS took custody.

¶20 Reasonable evidence supports the juvenile court's finding that Mother is unable to discharge her parental responsibilities or effectively parent due to her substance abuse. The final report from parent aide services indicated Mother cannot control her children; a sentiment echoed by DeCiancio. DeCiancio opined Mother's opiate abuse prevents her from successfully parenting. During an evaluation with Dr.

Glenn Moe, the children complained of Mother sleeping excessively, which Dr. Moe opined was the result of depression and opiate use. Dr. Moe ultimately concluded Mother cannot successfully parent because of her lengthy history of emotional and behavioral dysfunction and her regression to drug use, more services would not be beneficial, and Mother will be unable meet the children's needs in the foreseeable future.

¶21    The fact that Mother was caring for her new born child at the time of the severance hearing does not demonstrate she is capable of effectively parenting her four other children. A parent's ability to meet the needs of one child does not establish she is capable of caring for all children when there is substantial evidence of an inability to parent effectively. *See Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 98, ¶ 35, 219 P.3d 296, 308 (App. 2009). DeCiancio reported concerns Mother's opiate use would prevent her from effectively caring for all five children. Thus, reasonable evidence supports the juvenile court's finding that Mother's substance abuse renders her unable to discharge her parental responsibilities and would make her incapable of effectively parenting her four oldest children for the foreseeable future.

III.    Best Interests

¶22    Finally, Mother argues the juvenile court erred in finding severance was in the children's best interests. "Termination of the parent-child relationship is in the child's best interests if the child would be harmed if the relationship continued or would benefit from the termination." *Jose M. v. Eleanor J.*, 234 Ariz. 13, 17, ¶ 21, 316 P.3d 602, 606 (App. 2014). Factors considered include whether an adoptive placement is readily available, whether the existing placement is meeting the children's needs, and whether the children are adoptable. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30, 231 P.3d 377, 383 (App. 2010).

¶23    Reasonable evidence shows the children would be harmed if their relationship with Mother continued. Dr. Moe opined the children have an insecure and anxious relationship with Mother and are prone to regression when with her. Specifically, the children regressed behaviorally during unsupervised visits in December 2012. DeCiancio testified the children started acting out and regressed to soiling themselves after visits with Mother. Dr. Moe opined the three youngest children's enuresis is associated with visits with Mother. Reasonable evidence also shows the children's current foster placement is meeting their needs, the children are adoptable, and a suitable adoptive placement is readily available. DeCiancio explained the children's current foster

family is willing to adopt all four children, and the foster placement is able to meet the children's special needs. He testified the children's behaviors have improved while in foster care. Finally, Dr. Moe opined the children are in need of permanency and stability after prolonged reunification efforts. Thus, the children's regressive behaviors when with Mother, their progress in foster care, and the availability of a suitable adoptive placement capable of meeting the children's special needs while keeping all siblings together sufficiently supports the juvenile court's best interests finding.

**CONCLUSION**

¶24 For the foregoing reasons, we affirm the juvenile court's severance order.



Ruth A. Willingham · Clerk of the Court
FILED: MJT