NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ANDREW R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, M.R., *Appellees*.

No. 1 CA-JV 14-0298
FILED 3-24-2015

Appeal from the Superior Court in Maricopa County
No. JD14709
The Honorable Cari A. Harrison, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll Esq., Scottsdale
By Denise L. Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellees*

---

## MEMORANDUM DECISION

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge John C. Gemmill and Judge Kenton D. Jones joined.

---

**K E S S L E R**, Judge:

**¶1**        Andrew R. ("Father") appeals the juvenile court's order terminating his parental rights to his child M.R.  For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**        Andrew R. and Crystal C. ("Mother")[1] are the biological parents of M.R., born on December 11, 2008.  The Department of Child Safety ("DCS")[2] took temporary custody of M.R. in December 2012 due to allegations of abandonment, neglect, and substance abuse.  Mother had left M.R. in the maternal grandmother's care without leaving any forwarding address or phone number to reach her. Father was living in a halfway house and receiving substance abuse treatment.

**¶3**        Father contested all allegations at the Preliminary Protective Hearing in December 2012 and informed the juvenile court that he would be in the Maricopa County Sheriff's custody for approximately six months.  Father was not incarcerated until March 2013, but he failed to attend court, participate in services, or communicate with DCS between December 2012 and March 2013.  The juvenile court found that M.R. was dependent as to Father on February 27, 2013.

**¶4**        While incarcerated, Father remained in contact with his mother, his grandmother, and M.R.'s maternal grandmother.  Father had no contact with DCS or M.R., however.

**¶5**        The DCS case manager assigned to M.R. did not know that Father was incarcerated until Father's grandmother informed her several months after

---

[1] Mother's parental rights to M.R. were terminated in October 2014.  She is not a party to this appeal.  Accordingly, we will not address issues related to Mother.

[2] Effective May 29, 2014, the Arizona legislature repealed the statutory authorization for the Arizona Department of Economic Security ("ADES") under title 8, and the powers, duties, and purposes from that entity were transferred to the newly established DCS.  *See* 2014 Ariz. Sess. Laws 2d Spec. Sess., ch. 1, §§ 6, 20, 54.  For simplicity's sake, DCS has been substituted for ADES in this matter.

Father's arrest. Prior to that, the case manager had filed multiple parent locates in an effort to locate Father. Father's grandmother would not give the case manager Father's address, and the case manager did not use the Department of Corrections' website to locate Father. The case manager asked Father's grandmother to send Father a letter with the case manager's phone number, but the case manager had no contact with Father until his release in October 2013.

¶6 After his release in October 2013, Father appeared at the Permanency Planning Hearing later that month. Father stated that he was interested in participating in services and being involved in M.R.'s life, but the court granted DCS' request to change the case plan to severance and adoption with respect to Father. DCS notified Father of services he was required to complete to achieve reunification with M.R. by service letters, phone calls with the case manager, and at court hearings. These included substance abuse assessment and treatment through TERROS, random urinalysis through TASC, visitation, a case aid, and paternity testing.

¶7 Father failed to successfully complete any of the services with the exception of paternity testing. The paternity test had to be rescheduled four times due to Father's repeated failures to complete the scheduled tests. Paternity was finally established as to M.R. on April 9, 2014.

¶8 Although Father initially refused drug treatment because he said he did not need it, he later admitted at trial that he had a drug problem and had used methamphetamine regularly in the past. DCS sent referrals for TERROS when Father was released in October 2013 and again in January 2014, but both referrals were closed out due to lack of contact. Father asked to participate again in March but then declined services because he "did not feel like [he] needed it." The case manager asked Father about TERROS again in August 2014, but Father refused to participate when offered another referral at that time. At trial two months later, however, Father said he was willing to participate at TERROS and had an appointment set up for the end of the month.

¶9 DCS also sent a referral for TASC when Father was released in October 2013, but this too was closed out due to lack of contact. Although Father participated in several random urinalyses through TASC while on probation, he stopped participating after his probation ended in February 2014. DCS put in a new referral in April 2014, and although Father tested negative in April, May, and June 2014, he did not test each time he was required to in May and July, did not provide a hair follicle test sample as required, and quit testing and calling into TASC in July. After that, Father communicated with the case manager but did not mention that his TASC referral was expired. Father says he did not test on July 2 because he "just didn't think about it," he did not test in July 11 because of

3

"forgetfulness," and provided no explanation for why he did not test for the rest of July. As of September 2014, he had not resumed testing.

¶10　　　　While a referral for visitation was put out in late 2013, no evidence presented showed that Father was aware of this referral because the case manager sent all service letters to Father's grandmother's house and had no direct contact with him until October 2013. Once Father was released from custody, he was able to visit M.R. twice a week through the family placement and started participating consistently in visitation with the case aide in March 2014.

¶11　　　　Although Father testified at the severance hearing that he was willing to participate in services through TERROS, the juvenile court found statutory grounds for severance. First, the court found that Father had abandoned M.R. *See* A.R.S. §§ 8-531(1) (Supp. 2014), -533(B)(1) (Supp. 2014). The court based its decision on Father's failure to provide any reasonable support, maintain regular contact, or maintain a normal parental relationship with M.R. It stated that Father's efforts to maintain a relationship with M.R. had been minimal and related only to visitation, and accordingly were insufficient to overcome grounds for abandonment. Additionally, Father testified he had emotionally and physically abandoned M.R. in the period between the dependency hearing and the severance hearing.

¶12　　　　Second, the juvenile court found that Father had substantially neglected or willfully refused to remedy the circumstances that caused M.R. to be in an out-of-home placement. *See* A.R.S. § 8-533(B)(8)(a). It reasoned that DCS had made diligent efforts to provide reunification services for Father, but Father had failed to successfully complete any services with the exception of paternity testing.

¶13　　　　Finally, the juvenile court found that severance was in M.R.'s best interests. The court recognized that Father did not have stable housing or income at the time of the hearing and that Father had a history of drug use that remained untreated. Additionally, M.R. had been in her current placement since February 2014, and the placement was meeting all of her needs. In light of these facts, the court concluded that returning M.R. to the care of Father would subject her to untreated substance abuse issues, instability, homelessness, and neglect.

¶14　　　　The court granted severance of Father's parental rights on October 17, 2014. Father timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A) (2014), 12-120.21(A)(1) (2003), and 12-2101(A)(1) (Supp. 2014).

**DISCUSSION**

¶15      A parent's right to custody and control of his or her own child is fundamental, *Santosky v. Kramer*, 455 U.S. 745, 753 (1982), but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12, 995 P.2d 682, 684 (2000). To justify severance of a parental relationship, one of the statutory grounds provided in A.R.S. § 8-533(B) must be proven by clear and convincing evidence. *Id.* at 249, ¶ 12, 995 P.2d at 685. In addition, the State must prove by a preponderance of the evidence that severance of the relationship is in the child's best interest. *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41, 110 P.3d 1013, 1022 (2005). Because the juvenile court is in the best position to weigh evidence and judge credibility, "we will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002). We do not reweigh the evidence, but "look only to determine if there is evidence to sustain the court's ruling," *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8, 83 P.3d 43, 47 (App. 2004), and reverse only if no reasonable evidence to support the ruling exists, *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 376, ¶ 13, 231 P.3d 377, 380 (App. 2010). If the court finds multiple statutory bases for termination, we may affirm on any one basis and need not discuss the other bases for termination. *Jesus M.*, 203 Ariz. at 280, ¶ 3, 53 P.3d at 205.

    I.    Sufficiency of the Evidence

¶16      Father argues that insufficient evidence exists to support termination of his parental rights based on his substantial neglect or willful refusal to remedy the circumstances that caused M.R.'s out-of-home placement. A.R.S. § 8-533(B)(8)(a) provides:

> B. Evidence sufficient to justify the termination of the parent-child relationship shall include any one of the following, and in considering any of the following grounds, the court shall also consider the best interests of the child:
>
> . . .
>
> 8. That the child is being cared for in an out-of-home placement under the supervision of the juvenile court, the division or a licensed child welfare agency, that the agency responsible for the care of the child has made a diligent effort to provide appropriate reunification services and that one of the following circumstances exists:

5

(a) The child has been in an out-of-home placement for a cumulative total period of nine months or longer pursuant to court order or voluntary placement pursuant to § 8-806 and the parent has substantially neglected or willfully refused to remedy the circumstances that cause the child to be in an out-of-home placement.

**¶17** Severance under A.R.S. § 8-533(B)(8)(a) is not appropriate when a parent has made "appreciable, good faith efforts to comply with remedial programs outlined by [DCS]." *Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 576, 869 P.2d 1224, 1229 (App. 1994). The parent must, at a minimum, demonstrate "something more than trivial or de minimus efforts at remediation." *Id*. at n.1.

**¶18** Father does not dispute that M.R. was in an out-of-home placement for longer than nine months or that DCS provided sufficient reunification services. Rather, he argues his participation in services after his incarceration and at the time of the trial as well as his commitment to participate in future services prove that Father was doing more than "sporadic, aborted attempts to remedy." Specifically, Father attempts to support this argument by emphasizing his consistent participation in visitation with M.R., lack of positive drug tests, and his participation in services at the end of October 2014. According to Father, such evidence shows his commitment to reunification.

**¶19** We disagree. At the time of the severance hearing, M.R. had been in an out-of-home placement for almost two years. Father testified that he knew which services DCS asked him to engage in and that he refused all of the services offered to him. Father was first offered services when he was released from incarceration in October 2013 and repeatedly failed to participate. Although Father participated in some drug testing, he failed to provide a hair follicle test sample as required or complete his drug testing through TASC. Father also refused to participate in TERROS on multiple occasions and only agreed to participate in TERROS at the severance hearing in October. We recognize Father's efforts to participate consistently with visitation, but sufficient evidence exists to support the juvenile court's finding that Father's efforts did not surpass "trivial or de minimus efforts" at remediation. *See JS-501568*, 177 Ariz. at 576 n.1, 869 P.2d at 1224 n.1.

**¶20** Since the record supports the juvenile court's conclusion on out-of-home placement, we do not need to address the court's additional finding on abandonment. *Jesus M.*, 203 Ariz. at 280, ¶ 3, 53 P.3d at 205.

6

## II. Best interest

**¶21**          Father argues that the juvenile court erred when it found that severance was in the child's best interest. "Termination of the parent-child relationship is in the child's best interests if the child would be harmed if the relationship continued or would benefit from the termination." *Jose M. v. Eleanor J.*, 234 Ariz. 13, 17, ¶ 21, 316 P.3d 602, 606 (App. 2014).

**¶22**          Factors to be considered for best interests include whether an adoptive placement is immediately available, whether the existing placement is meeting M.R.'s needs, and whether M.R. is adoptable. *See Raymond F.*, 224 Ariz. at 379, ¶ 30, 31 P.3d at 383. A determination that the child is adoptable alone does not require the fact finder to conclude that severance is in the child's best interests. *Lawrence R. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 585, 587, ¶ 8, 177 P.3d 327, 329 (App. 2008).

**¶23**          Father argues that he is bonded to his child and has made great strides in maintaining his relationship with her through visitation. He claims that the State failed to prove by a preponderance of the evidence that M.R. would accrue an affirmative benefit from his parental rights being severed or that she would incur a detriment by continuing in the relationship. According to Father, no detriment to M.R. would result from allowing Father to continue to participate in services since DCS has not found an adoptive placement for M.R.

**¶24**          We disagree. At the time of trial, M.R. had been in an out-of-home placement for almost two years, and the case manager testified that prolonging finding a permanent placement for M.R. could be detrimental to her. Additionally, DCS presented evidence of Father's unstable housing and employment situations as well as evidence of Father's history of substance abuse. Sufficient evidence existed, therefore, to indicate that returning M.R. to the care of Father would subject her to untreated substance abuse issues, instability, homelessness, and neglect.

**¶25**          Additionally, the DCS case manager testified that the current placement was meeting all of M.R.'s needs and was even considering adopting M.R. Accordingly, sufficient evidence existed to support the juvenile court's finding that severance was in M.R.'s best interests.

## CONCLUSION

**¶26**        Having found sufficient evidence to support the juvenile court's findings, we affirm its order to terminate Father's parental rights to M.R.



Ruth A. Willingham · Clerk of the Court
FILED: ama