NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DEMETRIUS L.,
*Appellant,*

*v.*

JOSHLYNN F., D.L.,
*Appellees*.

No. 1 CA-JV 15-0034
FILED 7-30-2015

Appeal from the Superior Court in Mohave County
No.  B8015SV201404004
The Honorable Richard Weiss, Judge

**REVERSED AND REMANDED**

COUNSEL

Mohave County Legal Defender's Office, Kingman
By Eric Devany
*Counsel for Appellant*

Harris & Winger, Flagstaff
By Chad Joshua Winger
*Counsel for Appellee Joshlynn F.*

---

**MEMORANDUM DECISION**

---

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Peter B. Swann joined.

---

**O R O Z C O**, Judge:

¶1         Demetrius L. (Father) appeals the termination of his parental rights to D.L. (Child).  In light of this court's opinion in *Jose M. v. Eleanor J.*, 234 Ariz. 13 (App. 2014), we conclude this record does not establish by a preponderance of evidence that terminating Father's parental rights is in Child's best interests.  Accordingly, we reverse the termination order and remand to the juvenile court for further proceedings.

### FACTS AND PROCEDURAL BACKGROUND

¶2         Father is the biological father of Child and lived with Joshlynn F., Child's biological mother (Mother), when Child was born in 2006.  Father and Mother's relationship ended in 2009.  Although Father moved to California, Father and Mother agreed on an informal visitation schedule that governed Father's contact with Child.  Father's visitation ceased in 2010.

¶3         Mother petitioned to terminate Father's parental rights in 2014, citing abandonment under Arizona Revised Statutes (A.R.S.) section 8-533.B.1. as grounds for termination.  At the termination hearing, Mother testified that she stopped taking Child to California for visitation because Father began threatening her.  Mother testified that between 2010 and 2012, Father's only contact with Child was a Christmas gift Father gave Child through Father's brother.  Mother also stated that Father had no contact with Child between 2012 and 2014.  Mother acknowledged, however, that Child saw Father during a November 2013 incident at which an altercation occurred between Mother and members of Father's family.

¶4         Father testified that Mother stopped allowing him to visit Child in 2010 and blocked him from any further contact thereafter.  Father claimed he could not get in touch with Mother because Mother would not answer his phone calls and "blocked" his phone number and social media accounts.  Father stated that he attempted to get in touch with Mother by visiting her workplace and contacting various members of her family on

2

social media. Father testified that, in 2010, he sought court-ordered visitation in a California court but was told he had to file in Arizona. Father stated he filed an Arizona petition in 2011 but never had it served on Mother. Father filed another petition in early 2014 after the November 2013 altercation between Mother and members of his family. Father tried unsuccessfully to serve Mother with that petition around the time Mother filed her termination petition.

**¶5** The juvenile court terminated Father's parental rights. Father timely appealed and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S §§ 8-235.A, 12-120.21.A.1., and -2101.A.1. (West 2015),[1] and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**¶6** Father challenges both the juvenile court's finding of abandonment by clear and convincing evidence and the finding that termination would be in Child's best interests. Terminating parental rights requires a juvenile court to: (1) find one of the grounds for termination in A.R.S. § 8-533.B. established by clear and convincing evidence; and (2) determine a preponderance of evidence establishes that termination is in the child's best interests. *Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234 Ariz. 437, 440, ¶ 13 (App. 2014). Because we reverse the termination order based on the juvenile court's best interests finding, we analyze only that portion of the juvenile court's decision.

**¶7** Our supreme court has noted that terminating parental rights "necessarily involves the consideration of fundamental, often competing, interests of parent and child." *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶ 11 (2000). When making a best interests determination, a juvenile court must balance the "unfit" parent's rights against the child's. *Kent K. v. Bobby M.*, 210 Ariz. 279, 287, ¶ 37 (2005). Accordingly, a best interests finding in support of terminating parental rights requires proof that a child would either benefit from termination or be harmed by the relationship continuing. *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990).

**¶8** In this case, the juvenile court found that termination of Father's parental rights was in Child's best interests because Child was adoptable and "[a]s such, the stability and permanence [Child] may achieve

---

[1] We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

in the home of his mother and her husband would be in [Child's] best interest[s]." This conclusion was based presumably on the testimony of Mother and Mother's husband, who both stated that Child enjoyed a good relationship with Mother's husband. Mother's husband also testified that he wanted to adopt Child.

¶9 This court has previously recognized that a child's adoptability or the presence of an adoptive plan may be evidence that terminating parental rights would benefit a child. *See Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004). This court has noted, however, that these holdings occurred in the context of termination proceedings initiated by the State, where the child involved was in foster care. *Jose M.*, 234 Ariz. at 17-18, ¶ 23.

¶10 The distinction in *Jose M.* between the effect of adoption-related evidence in State-initiated and private termination proceedings is instructive here because the *Jose M.* court considered a termination petition much like the one in this case. As in *Jose M.*, Mother's termination petition cited abandonment as the statutory grounds for termination, and the juvenile court's best interests analysis relied on evidence of adoptability and a potential adoptive plan. The *Jose M.* court noted that such evidence would be insufficient to conclude terminating parental rights was in a child's best interests because the record lacked any evidence that the parent whose rights were terminated was harming child, incapable of parenting, or that adoption actually would provide further stability for the child. *Id.* at 17-18, ¶¶ 20-23. We conclude the same analysis applies to this case.

¶11 Although Mother testified that Father began threatening her, she offered no evidence showing abusive or violent behavior towards her or Child. There is no evidence Father has characteristics or habits that make him unable to parent Child, and there is likewise no evidence of legal issues, civil or criminal, that negatively implicates Father's ability to maintain a safe and meaningful parent-child relationship. Father has demonstrated a desire to have a relationship with Child, and Child's current living arrangement will be altered only if Father can show a family court that he can effectively care for Child during parenting time. But whether Father's parental rights are terminated will have no effect on the stability and permanency of Child's current situation. Unlike situations in which adoption obviously benefits a child by ending the need for foster care, the adoptive plan in this case does not establish an increase in stability and permanency that necessitates terminating Father's parental rights. As a result, we conclude this record does not establish a preponderance of

evidence that terminating Father's parental rights is in Child's best interests.

## CONCLUSION

**¶12**      Because the record does not establish a preponderance of evidence that termination of Father's parental rights is in Child's best interests, we reverse the termination order and remand for further proceedings.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama