NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

GLORIA M., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, C.H., A.H., *Appellees*.

No. 1 CA-JV 18-0056
FILED 6-19-2018

Appeal from the Superior Court in Maricopa County
No. JD 529951
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Ashlee N. Hoffmann
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge James P. Beene joined.

---

**C R U Z**, Presiding Judge:

**¶1**          Gloria M. ("Mother") appeals the superior court's order terminating her parental rights to her children, C.H. and A.H. (collectively, the "Children").  For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY[1]

**¶2**          In April 2016, the Department of Child Safety ("DCS") removed the Children from the custody of their father due to his incarceration and criminal investigation.[2]   At the time, Mother's whereabouts were unknown.  The Children were initially placed with their paternal grandparents and later placed with a paternal aunt.

**¶3**          DCS filed a dependency petition and the court found the Children dependent as to Mother due to abandonment, neglect, and substance abuse.  Six months later, DCS moved to terminate Mother's parental rights to the Children on the grounds of abandonment. Approximately a month thereafter, Mother contacted DCS to inquire about contact with the Children.  Because Mother was living out-of-state at the time, DCS scheduled weekly telephone contact between Mother and the Children.

**¶4**          In March 2017, DCS contacted Mother to set up services for her out-of-state and provided a service letter offering random urinalysis, substance abuse treatment, psychological consultation, and parenting

---

[1]      We view the facts in the light most favorable to affirming the superior court's findings, *Michael J. v. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 20 (2000), and will not reweigh conflicting evidence, *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 16 (App. 2016).

[2]      The superior court also terminated Father's paternal rights to the Children.  Father is not a party to this appeal.

classes. Mother informed DCS she was already receiving services because she was on probation for driving under the influence. DCS informed her she was to provide a release of information form that would enable DCS to verify Mother was receiving services, but Mother did not complete the release until September 2017 despite receiving multiple requests to do so. When DCS contacted Mother's probation officer and received records concerning Mother's probation, the records indicated Mother was not involved in the required services. DCS then requested that Mother be tested for substances via urinalysis, and the test results were positive for alcohol and opiates.

¶5            Mother violated her probation in September 2017 and was arrested. When she was arrested, another of her children was taken into custody because methamphetamine pipes were found in Mother's home within that child's reach. The other state's child protection agency offered Mother substance abuse treatment, random urinalysis, a psychological evaluation, and individual counseling. DCS' communications with the out-of-state agency later revealed that Mother was noncompliant with the offered services.

¶6            In October 2017, weekly telephone contact between Mother and the Children ceased at the Children's request. The same month, DCS amended the termination petition to allege the Children had been in an out-of-home placement for fifteen months or longer pursuant to court order.

¶7            After a two-day termination hearing, the superior court granted DCS' petition to terminate, finding DCS had proven both statutory grounds for termination. As to abandonment, the court found in part that Mother's last in-person contact with the Children was three years before the hearing; Mother did nothing to assert her parental rights while the Children were with Father from 2013 to 2016; and Mother provided the Children no financial support, gifts, cards, or letters before or during the pendency of the case. With regards to fifteen months' time in care, the court found in part that the Children had been in care for fifteen months or longer; DCS made diligent efforts to provide appropriate reunification services; Mother had the opportunity to engage in services but did not do so; and that, given Mother's lack of participation in reunification services, her then-current incarceration, and a pending out-of-state dependency case, there was a substantial likelihood Mother would not be capable of exercising proper and effective parental care and control in the near future.

¶8            The superior court also found DCS had proven termination of Mother's parental rights was in the Children's best interests. It found in

part that Mother was incarcerated; the Children had been in the paternal aunt's home for over a year; termination would further the plan of adoption and provide the Children with a safe and permanent home; the paternal aunt was an adoptive placement; and, if the paternal aunt was unable to adopt, the Children were adoptable.

**¶9** Mother timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A), and 12-2101(A)(1).

## DISCUSSION

**¶10** Mother argues the superior court erred by finding DCS proved the grounds for abandonment and fifteen months' time in care. Because we conclude sufficient evidence supports the ground of abandonment, we do not address Mother's arguments regarding the ground of fifteen months' time in care. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

**¶11** The superior court may terminate parental rights if DCS proves a statutory ground set out in A.R.S. § 8-533(B) by clear and convincing evidence, *Michael J. v. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000), and that termination is in the children's best interests by a preponderance of the evidence, *see Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights so long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).

I. Grounds for Termination

**¶12** Mother argues insufficient evidence supports the superior court's abandonment finding. She asserts Father interfered with her ability to communicate with the Children.

**¶13** Section 8-533(B)(1) provides that the superior court can terminate a parent-child relationship if the parent has abandoned the child. "Abandonment" means "the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision." A.R.S. § 8-531(1). It "includes a judicial finding that

a parent has made only minimal efforts to support and communicate with the child," *id.*, and it is measured by a parent's conduct, rather than their intent, *Michael J.*, 196 Ariz. at 249, ¶ 18. "Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment." A.R.S. § 8-531(1). When circumstances prevent the parent from exercising traditional methods of bonding with their child, the parent "must act persistently to establish the relationship however possible and must vigorously assert [their] legal rights to the extent necessary." *In re Pima Cty. Juvenile Severance Action No. S-114487*, 179 Ariz. 86, 97 (1994).

**¶14** Sufficient evidence supports the superior court's abandonment finding. When DCS took the Children into custody, Mother had not had in-person contact with the Children for approximately four-and-a-half years. Although Mother argues that Father interfered with her ability to see the children, citing *Calvin B. v. Brittany B.*, 232 Ariz. 292 (App. 2013) and *Jose M. v. Eleanor J., S.M.*, 234 Ariz. 13 (App. 2014), both cases are distinguishable. In *Calvin B.*, the court found that the parent seeking contact with the child "vigorously assert[ed] his legal rights" to see his child, including requesting visits via phone call and text message, requesting temporary orders to obtain parenting time, offering to take a drug test and to have his visitation supervised, and petitioning for contempt and to enforce parenting time against Mother. 232 Ariz. at 295, 298, ¶¶ 8-11, 27-29. Similarly, in *Jose M.*, the parent seeking contact with the child, despite "not play[ing] a significant role in the [child's] life," participated in some visitation and initiated a proceeding prior to the filing of the termination petition to establish parenting time. 234 Ariz. at 15, 17, ¶¶ 3-5, 18-19.

**¶15** Here, Mother had no contact with the Children for approximately four years before communicating with DCS in February 2017, one month after the filing of the termination petition. She also did not initiate family court proceedings with respect to establishing visitation with the Children. Although Mother argues she made numerous attempts to have contact with the Children while she was out-of-state, emails between Father and Mother from 2013 to 2015 demonstrate that Father responded to Mother's emails with photos, information about the Children, and a "promise to give [Mother] a chance to be a good coparent." The emails also demonstrate that Father provided Mother with information that would enable her to send the Children financial support and letters, but Mother declined to do so. Finally, the case manager testified that since DCS opened the case, Mother had not provided financial support, cards, gifts, or letters to the Children during the pendency of the case. *Calvin B.* and *Jose M.* are

accordingly distinguishable and do not support Mother's arguments. Sufficient evidence supports the court's finding of abandonment.

II.     Best Interests

**¶16**         When considering best interests, the superior court must balance the unfit parent's "diluted" interest "against the independent and often adverse interests of the child in a safe and stable home life." *Kent K.*, 210 Ariz. at 286, ¶ 35. "Of foremost concern in that regard is 'protect[ing] a child's interest in stability and security.'" *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 15 (2016) (citing *Kent K.*, 210 Ariz. at 286, ¶ 34). That removal may be in the child's best interest "may be established by either showing an affirmative benefit to the child by removal or a detriment to the child by continuing the relationship." *Jesus M.*, 203 Ariz. at 282, ¶ 14. "When a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely, a juvenile court may find that termination of parental rights . . . is in the child's best interests." *Demetrius L.*, 239 Ariz. at 4, ¶ 12. We cannot "assume that [the] child will benefit from a termination simply because he has been abandoned." *Id.* at ¶ 14.

**¶17**         Sufficient evidence also supports the superior court's best-interests finding. The DCS case manager testified that termination was in the Children's best interests because adoption would provide the Children stability, permanency, and a safe environment that was free of substances. She said the Children had been placed with the paternal aunt for over a year, the placement was providing the Children with structure and stability, and both Children had improved behaviorally since living with the aunt. She also opined that the Children would suffer severe detriment if they were removed from the placement because of their bond with the placement and the danger of regression if the Children were removed. Finally, she stated that if the paternal aunt were unable to adopt, the Children were adoptable. This evidence is sufficient to support the superior court's best-interests finding.

## CONCLUSION

**¶18** For the foregoing reasons, we affirm the superior court's order terminating the parent-child relationship between Mother and the Children.

