NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JENA H., *Appellant,*

*v.*

TODD H., M.H., D.H., *Appellees.*

No. 1 CA-JV 16-0168
FILED 6-8-2017

Appeal from the Superior Court in Mohave County
No. S8015SV201500002
The Honorable Richard Weiss, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Todd H., Kingman
*Appellee*

---

**MEMORANDUM DECISION**

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Kent E. Cattani joined.

---

**K E S S L E R**, Judge:

**¶1** Appellant Jena H. ("Mother") appeals the juvenile court's order terminating her parental rights to her children, DH and MH, on the grounds of relinquishment and abandonment. Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(1), (7) (2016).[1] For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY[2]**

**¶2** Mother is the biological mother of DH, born August 17, 2008, and MH, born July 4, 2011 (collectively, the "Children"). Todd H. ("Father") is the biological father of the Children. Mother, Father, and Father's second partner, LS, cohabitated as a family unit and shared parenting responsibilities for approximately seven years.[3] However, in June 2014, Mother told Father and LS she was leaving and moved out of the family home, leaving the Children with Father and LS.

**¶3** Over the next six months, Father and Mother scheduled twice-weekly visitations with the Children, but Mother's attendance became increasingly sporadic. After Mother failed to appear for several visits, upsetting the Children, Father and LS told Mother they were no longer going to tell the Children when Mother was going to visit, and Mother agreed. In January 2015, Father and LS presented Mother with a

---

[1] We cite to the current version of the relevant statutes unless changes material to this decision have since occurred.

[2] "We view the facts in the light most favorable to upholding the juvenile court's decision." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 449, ¶ 12 (App. 2007) (citation omitted).

[3] LS and Father also have two children together, and Father, Mother, and LS shared parenting responsibilities for all four children while they lived together.

"Notice of Surrender of Parental Rights to Minor Children" ("Notice"), which Mother signed. Mother then told Father and LS she wanted to make a "farewell video or letter" and no longer have any contact with the Children. A month after Mother signed the Notice, Father petitioned to terminate Mother's parental rights to the Children on grounds of relinquishment, attaching a copy of the Notice to his petition. After Mother responded to the petition, Father told Mother to stop contacting the Children because he believed it was disruptive and confusing to them.

¶4        Father moved for summary judgment, arguing Mother's execution of the Notice removed any issues of genuine fact regarding relinquishment. The juvenile court denied the motion because it found a genuine issue of material fact regarding whether the Notice complied with A.R.S. § 8-107 (2016) (providing requirements for consents to adoption). Father then amended his petition for severance to include abandonment and neglect[4] as grounds for termination.

¶5        After trial, the juvenile court terminated Mother's parental rights on the grounds of both relinquishment and abandonment. A.R.S. § 8-533(B)(1), (7). It found Father had proven abandonment by clear and convincing evidence and that the Notice was a knowing, intelligent, and voluntary relinquishment of Mother's parental rights to the Children pursuant to A.R.S. § 8-533(B)(7). It also found the Notice could be read as consent to an adoption of the Children by LS. The court concluded termination was in the Children's best interests and terminated Mother's parental rights to the Children in April 2016.

¶6        Mother timely appealed. We have jurisdiction pursuant to A.R.S. § 8-235(A) (2016).

---

[4]        The court struck the ground of neglect before trial.

**DISCUSSION**

**¶7** Mother challenges the juvenile court's finding of abandonment and the court's best interests finding.[5] Because we affirm on the ground of abandonment, we need not address the ground of relinquishment. *See* A.R.S. § 8-533(B) (requiring proof of only one ground to sever the parental relationship).

I. Standard of Review

**¶8** To justify severance of the parent-child relationship, the State must prove one of the grounds for severance in A.R.S. § 8-533 by clear and convincing evidence and demonstrate that severance of the relationship is in the child's best interest by a preponderance of the evidence. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). We will affirm the juvenile court's severance order unless there was an abuse of discretion or the court's findings of fact were clearly erroneous. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 58, ¶ 9 (App. 2015) (citations and quotations omitted).

II. Abandonment

**¶9** Mother challenges the juvenile court's finding that DCS had proven abandonment by clear and convincing evidence. She asserts insufficient evidence supported the court's finding that she failed to provide reasonable support, maintain regular contact, make more than minimal efforts to support and communicate with the Children, and maintain a normal parental relationship. Mother also alleges Father interfered with her ability to develop a normal parental relationship with the Children by terminating her contact with them in March 2015, citing *Calvin B. v. Brittany B.*, 232 Ariz. 292 (App. 2013) and *Jose M. v. Eleanor J.*, 234 Ariz. 13 (App. 2014). We disagree on both points.

**¶10** Section 8-533(A)(1) allows the juvenile court to sever a parent's rights when the parent has abandoned the child. "Abandonment" means "the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal

---

5 Mother does not challenge the court's finding of relinquishment in her opening brief. Although we could affirm the juvenile court's order on this basis, *see Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 13 (2000) (finding appellant conceded court's best interest finding by failing to challenge it), in the exercise of our discretion we will address the abandonment and best interests issues that Mother has preserved for our review.

supervision." A.R.S. § 8-531(1) (2016). It "includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child." *Id.* Abandonment is measured by a parent's conduct rather than a parent's subjective intent. *Michael J.*, 196 Ariz. at 249, ¶ 18. "What constitutes reasonable support, regular contact, and normal supervision varies from case to case," therefore questions of abandonment are questions of fact for resolution by the juvenile court. *Id.* at 250, ¶ 20 (citations and quotations omitted). We view the facts in the light most favorable to affirming the juvenile court's findings. *Id.* (citation omitted).

**¶11** We conclude sufficient evidence supports the juvenile court's finding of abandonment. Mother admitted at trial that she had not provided any clothing, groceries, or financial support after moving out in June 2014 except $100 for car seats and gifts for the Children's birthdays and holidays.[6] She also admitted that she could have provided support to the Children but chose not to. Her visits, although initially regular, became sporadic and inconsistent over time, and both LS and Father testified that Mother spent little time with the Children during her visits. LS and Father also testified that Mother did not help parent the Children or help with their schoolwork during her visits, and she often spent her visits talking with LS or playing games on her phone. Although Mother sent the Children letters, she did not do so until June 2015, approximately a year after she moved out of the family home, and although LS agreed that Mother called the Children as frequently as Mother's call logs showed, LS's testimony and the call logs show these calls were only two to five minutes in length. Viewing these facts in the light most favorable to affirming the juvenile court's order, we conclude sufficient evidence supports the court's finding that Mother abandoned the Children. *Christy C.*, 214 Ariz. at 449, ¶ 12. We find no abuse of discretion.

**¶12** Although Mother asserts Father interfered with Mother's ability to develop a normal parental relationship with the Children by terminating her contact with them in March 2015, citing *Calvin B.*, 232 Ariz.

---

[6] Mother asserts she provided $200, car seats for her vehicle, and money to LS to buy car seats for LS's vehicle, but LS denies Mother bought car seats for LS's vehicle. She says Mother initially offered to help LS buy a car seat, but that LS ended up returning the car seat and giving the money back to Mother. She does admit Mother paid Father $100 on two separate occasions in the month after she left in June 2014. We defer to the juvenile court's determination of witness credibility and the weight to give conflicting evidence. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347-48, ¶ 13 (App 1998) (citation omitted).

292 and *Jose M.*, 234 Ariz. 13, we disagree. In *Calvin B.*, the parent opposing severance "actively sought more involvement with their son than [the other parent] would allow," petitioning for joint custody, complaining the other parent did not allow time with their child, seeking an order establishing a fixed amount of parenting time, consistently seeking visits with the child, and seeing the child whenever the other parent would allow. 242 Ariz. at 297, ¶ 22. In contrast, Father testified he had to set up a visitation schedule with Mother after she left in June 2014 because she had not done so before leaving, he had to re-establish Mother's visitation schedule with Mother after either parent would leave town, and Mother's visits declined and became sporadic over the course of several months.

**¶13** In *Jose M.*, this Court found that the other parent had declined to allow some of the father's requests for parenting time and apparently filed the private severance action in response to the father's attempt to establish court-ordered parenting time. 234 Ariz. at 17, ¶¶ 18-19. However, in this case, Mother requested temporary orders on March 6, 2015, a month after Father petitioned for severance, and she did not request visitation or to see the Children at any time between that time and June 2015. These cases are therefore distinguishable from the present case.

III.    Best Interests

**¶14** Before severing parental rights, the juvenile court must find that severance is in the best interests of the child by a preponderance of evidence. *Kent K.*, 210 Ariz. at 284, ¶ 22. To show that termination is in the best interest of the child, a petitioner must prove the child "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004) (citations omitted). "The benefit of severance to the child is that which the legislature intended: freedom to be adopted into a stable and nurturing home." *Id.* (citation and quotation omitted). The court may consider the immediate availability of an adoptive placement as a factor in favor of severance. *See In re Pima Juv. Action No. S-2460*, 162 Ariz. 156, 158 (App. 1989).

**¶15** Sufficient evidence supports the juvenile court's finding that the Children would benefit from severance and be harmed by continuation of the parental relationship. At trial, Father asserted severance would benefit the Children because it would restore stability, allow LS to adopt them, and simplify the Children's questions about who their mother was. LS expressed her desire to adopt the Children and stated she performed parental duties for the Children and the Children call her "mom." In

contrast, Father estimated that Mother has spent a total of twenty hours with the Children since she moved out in June 2014, and Mother admitted she did not help the Children with their schoolwork or help provide for them after she moved out of the house.

¶16 A family friend testified that when she visited the family in May 2014, Mother was very distant with the Children, would shoo them away when they asked her for attention, and spent her time at home in her bedroom on her phone. She also testified Mother expressed regret about having Children and "a lot of the time she said she wishe[d] that she didn't have her kids." LS testified that Mother's lack of attention during visits would upset the Children, but when Mother noticed the Children trying to get her attention she would either ignore them or become irritated. Mother admitted she would sometimes ignore the Children's requests for attention. Finally, Father and LS explained that the sporadic nature of Mother's visits caused the Children to cry and get upset, to the point that they stopped telling the Children Mother was coming to visit. This evidence is sufficient to support the court's findings that severance was in the Children's best interests.

## CONCLUSION

¶17 For the foregoing reasons, we affirm the termination of Mother's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:  AA

7