NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MICHAEL M., *Appellant*,

*v.*

KATIE A., E.O., *Appellees*.

No. 1 CA-JV 16-0443
FILED 8-15-2017

Appeal from the Superior Court in Maricopa County
No. JS517064
The Honorable Janice K. Crawford, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Katie A.
*Appellee*

Terrea L. Arnwine PLLC, Tempe
By Terrea L. Arnwine
*Guardian Ad Litem for Appellee E.O.*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Margaret H. Downie joined.

---

**C R U Z**, Judge:

¶1        Michael M. ("Father") appeals the superior court's order terminating his parental rights.  For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        Father is the biological father and Katie A. ("Mother") is the biological mother of E.O., born August 16, 2007.  Mother and Father were unmarried at E.O.'s birth, and after E.O.'s birth, their relationship ended. Mother and E.O. moved into the maternal grandmother's home, and Father moved in with his grandparents ("Great-Grandparents").

¶3        During weekends, E.O. would stay with Great-Grandparents, and Father would visit with E.O. at either Great-Grandparents' or his mother's ("Grandmother") house.  Mother and Father maintained this visitation schedule for approximately five months until Father was arrested for theft-related charges in December 2007.[1]  Approximately six months later, the family court awarded Mother sole legal decision-making authority of E.O. and awarded Father supervised parenting time.  Father was incarcerated again in 2010 for burglary, but Mother continued to allow Grandmother and Great-Grandparents visitation with E.O. on weekends despite Father's incarceration.  Father remained in prison for the entirety of the severance proceedings.[2]

---

[1]      Around this time, Mother and her parents acquired two orders of protection against Father due to harassment and a domestic violence altercation, so Grandmother or Great-Grandparents would pick E.O. up for visitation.

[2]      Father was initially scheduled for release in 2013, but his sentence was extended for an additional year-and-a-half because he used marijuana while incarcerated.

¶4            In 2012, Mother started dating Alan A. ("Stepfather") and told Father to stop contacting her.  She married Stepfather in April 2013, and she filed for severance of Father's parental rights in August 2013 on the grounds of Father's incarceration being of such length that E.O. would be deprived of a normal home for a period of years.  *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(4).[3]  Mother later amended the petition to allege the grounds of abandonment and inability to discharge parental responsibilities due to substance abuse.  *See* A.R.S. § 8-533(B)(1), (3).

¶5            Shortly after filing for severance, Mother noticed E.O. began demonstrating behavioral issues, and in early 2014, Mother learned Grandmother and Great-Grandparents had begun facilitating phone calls between E.O. and Father on Grandmother's cell phone.  After Great-Grandparents refused Mother's request that they stop the calls, Mother ended weekend visitation with the Great-Grandparents and Grandmother.

¶6            The severance hearing occurred in August 2014, and the superior court issued its first ruling in November 2014.  The court denied Mother's petition to sever, finding Father had abandoned E.O. but that severance was not in E.O.'s best interest because it would cause E.O. to lose her relationship with Great-Grandparents.  E.O.'s guardian *ad litem* appealed the best interest finding, and this Court vacated and remanded the November 2014 ruling for reconsideration of E.O.'s best interest.  *E.O. v. Michael M.*, 1 CA-JV 14-0310, 2015 WL 4655933, at *3, ¶ 14 (Ariz. App. Aug. 6, 2015) (mem. decision) ("*E.O. I*").

¶7            On remand, the superior court incorporated its factual findings from the November 2014 ruling, affirmed the ground of abandonment, and again found severance was not in E.O.'s best interest.  It specifically found, in part, that Mother had failed to "establish that the stability, love, and permanence [E.O. was] already experiencing in the home would be enhanced through adoption by Stepfather, especially in the absence of any harm to [E.O.] in maintaining the parental bond between [E.O.] and Father."  E.O.'s guardian *ad litem* appealed again, and this Court vacated and remanded the November 2014 ruling for a determination of E.O.'s best interest in light of *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 365 P.3d

---

[3]        We cite the current version of statutes unless revisions relevant to this decision have occurred since the events in question.

353 (2016). *E.O. v. Michael M.*, 1 CA-JV 15-0380, 2016 WL 4366739, at *1, ¶ 1 (Ariz. App. Aug. 16, 2016) (mem. decision) ("*E.O. II*").

¶8            The superior court issued its final ruling in October 2016. It again incorporated its findings on the ground of abandonment as set forth in the November 2014 ruling and affirmed the ground of abandonment. However, it found severance was in E.O.'s best interest because, in part: (1) Stepfather was meeting all E.O.'s needs; (2) an adoption plan existed; (3) Stepfather wanted to adopt E.O. but the proposed adoption would only be legally possible if Father's parental rights were terminated; (4) adoption by Stepfather would provide E.O. with permanency and stability, ensuring E.O. could stay with Stepfather and E.O.'s half-sibling if anything should ever happen to Mother; and (5) Father's abandonment had a negative effect on E.O.

¶9            Father timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-1201(A), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶10           Father challenges both the superior court's abandonment and best interest findings. For the following reasons, we affirm the superior court's order severing Father's parental rights to E.O.

I.       Standard of Review

¶11           We review the superior court's severance order for an abuse of discretion. *Frank R. v. Mother Goose Adoptions*, 239 Ariz. 184, 190, ¶ 21, 367 P.3d 88, 94 (App. 2016). We view the facts in the light most favorable to affirming the superior court's findings. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 20, 995 P.2d 682, 686 (2000).

¶12           A parent's rights in the care, custody, and management of their children are fundamental, but not absolute. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24, 110 P.3d 1013, 1018 (2005). A court may sever those rights if it: (1) finds clear and convincing evidence of one of the statutory grounds for severance in A.R.S. § 8-533(B); and (2) finds by a preponderance of the evidence that severance is in the child's best interest. A.R.S. § 8–537(B); *Kent K.*, 210 Ariz. at 281–82, 288, ¶¶ 7, 41, 110 P.3d at 1015–16, 1022.

II.     Abandonment

¶13     Father argues the superior court erred in finding he abandoned E.O. because: (1) Mother prevented Father from having contact with E.O.; and (2) insufficient evidence supported the court's abandonment finding.

¶14     A court may sever a parent's parental rights if the parent abandons the child.  A.R.S. § 8-533(B)(1).  "Abandonment" is "the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision."  A.R.S. § 8-531(1).  It "includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child."  *Id.*  "[A]bandonment is measured not by a parent's subjective intent, but by the parent's conduct . . . ."  *Michael J.*, 196 Ariz. at 249, ¶ 18, 995 P.2d at 685.

¶15     Incarceration "neither provide[s] a legal defense to a claim of abandonment nor alone justifies severance on the grounds of abandonment."  *Id.* at 250, ¶ 22, 995 P.2d at 686 (internal quotations and citation omitted).  It is but one factor to consider in evaluating a parent's ability to perform his parental obligations. *Id.* (citation omitted). Similarly, nonpayment of child support alone is not enough to establish abandonment. *In re Yuma Cty. Juv. Court Action No. J-87-119*, 161 Ariz. 537, 539, 779 P.2d 1276, 1278 (App. 1989).  When circumstances prevent a parent from "exercising traditional methods of bonding with his child, he must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary."  *Michael J.*, 196 Ariz. at 250, ¶ 22, 995 P.2d at 686 (citation and internal quotations omitted).

¶16     Father cites *Calvin B. v. Brittany B.*, 232 Ariz. 292, 304 P.3d 1115 (App. 2013) and *Jose M. v. Eleanor J.*, 234 Ariz. 13, 316 P.3d 602 (App. 2014) in support of his assertion that Mother prevented him from having contact with E.O. by terminating visits with Great-Grandparents and Grandmother in February 2014.  Although Father is correct that a parent "may not restrict the other parent from interacting with their child and then petition to terminate the latter's rights for abandonment," *Calvin B.*, 232 Ariz. at 297, ¶ 21, 304 P.3d at 1120, that is not what happened here.  Here, Mother restricted Father's family from interacting with E.O. after she filed the severance petition.   Father had Mother's address throughout the proceedings, but except for one letter, chose to contact E.O. exclusively through Grandmother and Great-Grandparents.  Additionally, evidence in the record indicates Father did not participate in the visitation available to him prior to Mother's petition, unlike the parents in *Calvin B.* and *Jose M.*

*See Calvin B.*, 232 Ariz. at 297-98, ¶¶ 22-24, 29, 304 P.3d at 1120-21 (stating father "vigorously assert[ed] his legal rights" to see his child prior to the filing of the severance petition); *Jose M.*, 234 Ariz. at 17, ¶¶ 18-19, 316 P.3d at 606 (vacating best-interest finding because mother had declined father's pre-petition requests for court-ordered parenting time and "apparently filed the severance action in response to Father's attempt to establish court-ordered parenting time"). Because *Calvin B.* and *Jose M.* are factually distinguishable, neither controls the outcome of this case.[4]

**¶17**    Father's argument that insufficient evidence supported the superior court's abandonment finding also fails. Father highlights social worker Polly Thomas' testimony that Father was interested in and knowledgeable about E.O. in support of his assertion that he did not abandon E.O. However, Thomas also stated that Father "had basically delegated his parental rights to his biological mother, and she was doing the visitation, the transportation, and the weekend visitation with his daughter" before his incarceration and "maintained the father-child relationship while he was incarcerated through correspondence and sharing of information."

**¶18**    Ample evidence supports Thomas' statements and the superior court's finding that Father had "made only minimal efforts to support and communicate with the child." *See* A.R.S. § 8-531(1). Father admitted at trial that before his imprisonment, he was unable to hold employment, had been evicted due to his substance abuse problems, was only able to sporadically make child support payments, and relied on Grandmother and Great-Grandparents to provide for E.O. Father stated E.O.'s clothing and wardrobe were purchased by Father and his family, but Father could not specify which items had been purchased by him specifically. Father also acknowledged being in arrears on child support by several thousand dollars. Although we recognize Father's family's efforts to maintain a relationship between E.O. and Father, sufficient evidence supports the superior court's finding of abandonment, and we find no abuse of discretion.

---

[4]    To the extent Great-Grandparents and Grandmother wished to continue visitation with E.O. after Father's rights were severed, Grandmother and Great-Grandparents could have petitioned for visitation as advised by this court in *E.O. I. See infra* ¶ 22.

III.    Best Interest

¶19       Father asserts the superior court erred in concluding severance was in E.O.'s best interest because:  (1) it placed too much weight on the fact that Mother was married to Stepfather; (2) severance would not be in E.O.'s best interest because it would terminate her relationship to Great-Grandparents;[5] and (3) the court should not have applied *Demetrius L.* retroactively.

¶20       When considering a child's best interest, the superior court "must balance the unfit parent's 'diluted' interest 'against the independent and often adverse interests of the child in a safe and stable home life.'" *Demetrius L.*, 239 Ariz. at 4, ¶ 15, 365 P.3d at 356 (citation omitted). Protecting a child's interest in stability and security is of foremost concern in this inquiry. *Id.* at ¶ 16.  Severance is in the child's best interest "if the child would be harmed if the relationship continued or would benefit from the termination." *Id.*  A prospective adoption is a benefit that can support a best-interest finding. *Id.*

¶21       Here, sufficient evidence supports the superior court's best interest finding.  As in *Demetrius L.*, E.O. "already lives in a stable household not only with a custodial parent, but also with a close, loving stepparent who is prepared and willing to adopt" her; "Stepfather has been married to Mother for several years"; and Stepfather's adoption of E.O. "is much more certain than a mere possibility." *Id.* at 5, ¶ 19, 365 P.3d at 357. Thomas testified that E.O. was in "a very secure, structured environment with a biological parent and a stepparent who cares a great deal about her," and that Mother and Stepfather had "established a safe and secure home" and were meeting E.O.'s educational needs.  She also stated E.O. was getting along well with her new step-sibling and biological sibling,[6] and she saw no reason to disrupt that relationship at the time.  Thomas and the maternal grandmother also testified that E.O. already addressed Stepfather as her father.

---

[5]     In making this argument, Father highlights the superior court's 2014 and 2015 rulings.  However, we do not address the best-interest findings of the 2014 and 2015 rulings because they were vacated by this Court. *See E.O. I*, at *3, ¶ 14; *E.O. II*, at * 1, ¶ 1.

[6]     Stepfather brought a child into the marriage, and Mother and Stepfather have a child in common.

**¶22** Furthermore, to the extent severance would affect Grandmother and Great-Grandparents' relationship with E.O., Grandmother and Great-Grandparents could have petitioned for visitation prior to severance pursuant to A.R.S. § 25-409(C), as this Court noted in *E.O. I*, at *3, ¶ 13.[7]

**¶23** Finally, we reject Father's argument that the superior court erred in applying *Demetrius L.* retroactively. In actions involving purely civil matters, there is a "presumption that opinions by appellate courts of this state are retroactive as well as prospective." *Chevron Chemical Co. v. Superior Court*, 131 Ariz. 431, 435-36, 641 P.2d 1275, 1279-80 (1982). In cases with only prospective effect, the court will say so specifically. *Hollywood Continental Films v. Indus. Comm'n*, 19 Ariz. App. 234, 236, 506 P.2d 274, 276 (1973). To overcome the presumption of both retroactive and prospective effect, "the opinion (1) must have established a new legal principle by either overruling clear and reliable precedent or by deciding an issue whose resolution was not foreshadowed; (2) must affect adversely the purpose behind the rule in question[;] and (3) must produce substantial inequitable results if applied retroactively." *Chevron*, 131 Ariz. at 436, 641 P.2d at 1280.

**¶24** The supreme court did not specify that *Demetrius L.* was prospective only. *See Demetrius L.*, 239 Ariz. 1, 365 P.3d 353. Furthermore, *Demetrius L.* did not "establish a new principle" or decide "an issue whose resolution was not foreshadowed"; it merely clarified the interpretation of an existing legal principle. *See id.* at 4, ¶ 12, 365 P.3d at 356 ("When a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely, a juvenile court may find that termination of parental rights, so as to permit adoption, is in the child's best interests.") (citing *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50-51, ¶¶ 19-21, 83 P.3d 43, 50-51 (App. 2004) and *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 378, ¶ 6, 982 P.2d 1290, 1292 (App. 1998)). The court did not err in applying *Demetrius L.* to this case.

**¶25** Because sufficient evidence supported the superior court's best interest finding, we find no abuse of discretion.

---

7      "Pursuant to [§ 25-402(B)(2)] a person other than a legal parent may petition the superior court for visitation with a child." A.R.S. § 25-409(C). "The superior court may grant visitation rights during the child's minority on a finding that the visitation is in the child's best interests and that . . . [t]he child was born out of wedlock and the child's legal parents are not married to each other at the time the petition is filed." A.R.S. § 25-409(C)(2).

**CONCLUSION**

**¶26** For the foregoing reasons, we affirm the superior court's order severing Father's parental rights to E.O.

